UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION FOR EDUCATION FINANCE AND POLICY, INC.; THE INSTITUTE FOR HIGHER EDUCATION POLICY, <br><br>      Plaintiffs, <br><br>      v. <br><br> LINDA MCMAHON, in her official capacity as Secretary of Education; U.S. DEPARTMENT OF EDUCATION, <br><br>      Defendants. | Civil Action No. 25-999-TNM |

**DECLARATION OF BRENT J. EVANS**

I, Brent J. Evans, declare as follows:

1.     I am an Associate Professor of Public Policy and Higher Education at Peabody College, Vanderbilt University. I received my B.A. from the University of Virginia, followed by an M.Ed. (Master of Education) from Harvard University and an M.A. in Economics from Stanford University. I completed my Ph.D. at the Stanford University Graduate School of Education in the Center for Education Policy Analysis, where I also received a Certificate in Quantitative Research Methods.

2.     I am a member of the Association for Education Finance and Policy (AEFP).

3.     My research focuses on higher education policy using economics as a framework to focus on issues of college access and student access. I have focused in particular on the effect of financial aid on student and institutional outcomes, as well as on student decision-making regarding whether to borrow to finance postsecondary education.

4.      The Institute of Education Sciences (IES), a research agency within the U.S. Department of Education (ED), has control over many restricted-use datasets involving research on a large range of educational topics. Access is restricted to protect the privacy of respondents, including students, teachers, faculty, and parents, whose personal information is contained in the datasets. IES issues licenses to permit access to the restricted data. I am the principal project officer in my Department (Leadership, Policy and Organizations) managing these licenses to IES's restricted-use data. Each license permits access for six users. Given the level of research interest in these datasets by faculty and graduate students in my Department, we have six licenses allowing access to dozens of IES restricted datasets. We have 23 approved users (faculty and students) on our Department's licenses.

5.      The following are the restricted-use IES datasets that I use most frequently: Integrated Postsecondary Education Data System (IPEDS) (institution level data); Beginning Postsecondary Students Longitudinal Study (BPS) (multiple waves—meaning, the study has tracked several different cohorts over time); Baccalaureate and Beyond (B&B); National Postsecondary Student Aid Study (NPSAS) (multiple waves); Postsecondary Education Transcript Collections (PETS) (multiple studies); National Education Longitudinal Study of 1988 (NELS); Education Longitudinal Study of 2002 (ELS); and High School Longitudinal Study of 2009 (HSLS).

6.      My colleagues and graduate students are using these additional datasets, which are more focused on pre-K to 12: Common Core of Data; Early Childhood Longitudinal Study (ECLS); National Household Education Survey (NHES); and Schools and Staffing Survey (SASS).

7.      As explained below, defendants' actions in shutting down the work of IES have

deterred me from completing or initiating research projects that are administered by IES or

involve IES restricted data. The same is true for my colleagues.

8.      First, the upcoming termination of the remote-access restricted data use program

will have a significant impact on students' and other researchers' ability to access restricted data.

Currently, users can access restricted data in two ways: (1) a remote-access option, which allows

access through a virtual research platform using the internet; or (2) via a secure data room in our

Department, which contains two stand-alone computers not connected to the internet, in which

users access the data off of CDs provided by IES. My Department at Vanderbilt University does

not have any remote-access licenses, and I personally do not use one. But some of our current

and former students have used remote-access licenses provided by other contractors. On

February 10, 2025, we received notification from IES that it will be terminating remote access,

effective June 1. That elimination will effectively block access to the data by our students who

are living out-of-state and studying remotely.

9.      The much bigger problem for us is that IES has indefinitely delayed its disclosure

review process. Licensees are not permitted to share publicly their analyses of restricted data

until IES approves the disclosure. The reason for the limitation is to prevent the disclosure of

information that might identify an individual. That means that my colleagues, students, and I

cannot publish a research paper or policy report containing an analysis of the data, speak at a

conference, make a presentation to stakeholders using the data, or use it in class to teach until

that disclosure is approved by IES. Before recent events, approval was not difficult to obtain. I

would email IES a form and the information I proposed to disclose for IES's review. An IES

employee would review my submission and respond within 5-10 business days, indicating any necessary changes to my proposal and approving that disclosure.

10.     On February 14, 2025, I received an email from IES stating that, "[d]ue to recent reductions in resources, the disclosure risk review (DRR) time may take longer than the expected 5-10 business days. Please plan to budget extra review time for materials submitted for DRR." A true and correct copy of that email is attached as Exhibit 1.

11.     This delay in the disclosure review process has directly affected my work and that of my colleagues and graduate students. I was in the middle of working on a research paper that relies on BPS data. I paused working on it because of the uncertainty as to whether and when I would be permitted to share the paper or publish it. I had discussed embarking upon a different research project with a colleague at the University of Missouri that involves multiple waves of BPS data. We decided to suspend work on that, as well.

12.     The uncertainty is exacerbating the problem because we do not know whether approval of disclosures is merely delayed or halted altogether. The prospect of delays in disclosure approvals and the possibility of outright cancellation of licenses are leading researchers to stop working with IES restricted datasets.

13.     Faculty and students in my Department are putting projects on hold or switching projects altogether. I am well positioned to observe these consequences because I organize the licenses for the whole Department. A graduate student in Chicago had been considering traveling to Nashville to use our secure data room, but she canceled her trip and is considering taking up a different dissertation project. Another graduate student is also thinking of switching dissertation projects because of the threat of disclosure delays and possible disruption to data access.

14. There are no ready substitutes for the IES restricted datasets upon which my colleagues, students, and I rely. These restricted use datasets comprise most of the useful educational data at the national level. There is some state data, but again, that data is not nationally representative. Most of my own research concerns federal educational policy. So, for me, IES data is essential and irreplaceable.

15. Given the disruption to IES's work, my colleagues and I have other concerns. First, we are worried that, without IES, there will be far less funding available to do the kind of educational research we do. Second, I am concerned about the loss of access to knowledgeable staff that can answer questions about the data. The IES datasets are highly complex, and the documentation available is not always as informative as necessary. IES has previously provided assistance to researchers who have questions about the data, and I have taken advantage of this resource by reaching out to IES contacts, which are provided for individual datasets, to ask questions about specific variables or data elements. Receiving responses to those queries are essential for accurate data analysis. As another example, IES provides a helpline to support the IPEDS data. If I have a question about IPEDS, for example, I have a phone number I can call to contact an individual with expertise. I have used this helpline in the past.

16. There is broad concern across the educational research field. For example, I am a member of the editorial board for the Research in Higher Education journal. When research papers are submitted for publication, the journal engages in a peer review process to evaluate the paper. The journal is grappling with the policy it should adopt if a researcher loses access to restricted data after submitting a paper to the journal. The researcher would then not be able to edit the paper as recommended by the journal's peer reviewers. Should the journal reject the paper or publish it

with a caveat that the paper went through a non-data review process? We are having to navigate these issues with little time to fully consider the consequences.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 16, 2025

Brent J. Evans

# EXHIBIT 1

 Outlook

---

**Important information about IES disclosure risk review (DRR)**

---

**From** IESData.Security@ed.gov <IESData.Security@ed.gov>

**Date** Fri 2/14/2025 12:37 PM

**To** IESData.Security@ed.gov <IESData.Security@ed.gov>

---

Restricted-use license holders,

Due to recent reductions in resources, the disclosure risk review (DRR) time may take longer than the expected 5-10 business days. Please plan to budget extra review time for materials submitted for DRR.

As a reminder, per your restricted-use data license agreement, all products containing information based on based on restricted-use data (e.g., conference presentation, dissertation, journal article) must undergo disclosure risk review before they are shared with individuals not included as authorized users on the restricted-use data license. Please send all submissions to IES_DRR@ed.gov. Failure to follow this required process can result in the revocation of your license.

Thank you,

NCES

EFFECTIVE IMMEDIATELY:
Until such time as ED Offices are fully reopened, all mail must be sent to: IES Data Security

IES Data Security, NCES, PCP 4165
400 Maryland Avenue SW
Washington, DC 20202
Office: 202-245-7674
IESData.Security@ed.gov