UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION FOR EDUCATION FINANCE AND POLICY, INC., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>LINDA MCMAHON, in her official capacity as Secretary of Education, et al.,<br><br>        Defendants. | Civil Action No. 25-0999 (TNM) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
AND MOTION FOR RELIEF FROM LOCAL RULE 7(N)(1)'S REQUIREMENTS**

# TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table of Authorities ............................................................................................ ii

Introduction ........................................................................................................1

Argument .............................................................................................................2

    I.     Plaintiffs Lack Standing. ...................................................................2

          A.     Plaintiffs Fail to Demonstrate Informational Standing on Behalf of Themselves or Their Members Regarding Any Alleged Lack of Access to Information ...............................................................................................2

          B.     Plaintiffs Fail to Demonstrate Either Organizational Standing or Associational Standing for Any Other Non-Informational Harms. ............4

    II.    The Court Lacks Jurisdiction Over Plaintiffs' Challenge to the Cancellation of the Institute's Contracts. ...................................................................................5

    III.   Plaintiffs Fail to Sufficiently Allege Claims Under the APA. .............................7

          A.     Plaintiffs Do Not Seek Judicial Review of a Discrete Agency Action. ......7

          B.     Plaintiffs Do Not Identify a Final Agency Action. ....................................8

          C.     There Are Adequate Alternative Remedies Available. ............................11

          D.     The Department's Programmatic Implementation Decisions Are Committed to Agency Discretion .............................................................12

    IV.   Plaintiff IHEP's Unreasonable Delay Claims Should Be Dismissed with Prejudice ...................................................................................................14

    V.    Defendants Should Be Relieved of Their Obligation to File a Certified List of the Administrative Record and Serve the Administrative Record Simultaneously with this Motion ...................................................................................................15

Conclusion .......................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................13

*Belizan v. Hershon*,
    434 F.3d 579 (D.C. Cir. 2006) .............................................................................15

*BenefitAlign, LLC v. Ctrs. for Medicare & Medicaid Servs.*,
    Civ. A. No. 24-2494 (JEB), 2024 WL 6080275 (D.D.C. Sept. 30, 2024) ...........9, 10

*Bennett v. Spear*,
    520 U.S. 154 (1997) ................................................................................................9

*Coal. for Underground Expansion v. Mineta*,
    333 F.3d 193 (D.C. Cir. 2003) .............................................................................16

*Columbus Reg'l Hosp. v. United States*,
    990 F.3d 1330 (Fed. Cir. 2021) ...........................................................................12

*Cross v. EEOC*,
    Civ. A. No. 25-3702 (TNM), 2025 U.S. Dist. LEXIS 231723 (D.D.C. Nov. 25, 2025) ...........3

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ............................................................................................4, 5

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
    878 F.3d 371 (D.C. Cir. 2017) ............................................................................3, 5

*Elec. Priv. Info. Ctr. v. FAA*,
    892 F.3d 1249 (D.C. Cir. 2018) .............................................................................3

*Firestone v. Firestone*,
    76 F.3d 1205 (D.C. Cir. 1996) .............................................................................15

*Hurd v. District of Columbia*,
    864 F.3d 671 (D.C. Cir. 2017) .............................................................................16

*Ingersoll-Rand Co. v. United States*,
    780 F.2d 74 (D.C. Cir. 1985) ...............................................................................12

*LaShawn A. v. Barry*,
    87 F.3d 1389 (D.C. Cir. 1996) ...............................................................................8

*Lincoln v. Virgil*,
    508 U.S. 182 (1993) ...................................................................................................13

*Louisiana v. Biden*,
    622 F. Supp. 3d 267 (W.D. La. 2022) .....................................................................10

*Lujan v. Nat'l Wildlife Fed.*,
    497 U.S. 871 (1990) .....................................................................................................7

*Markowicz v. Johnson*,
    206 F. Supp. 3d 158 (D.D.C. 2016) .......................................................................13

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982) ..................................................................................6

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
    763 F. Supp. 3d 36 (D.D.C. 2025) .........................................................................10

*Nat'l Treasury Emps. Union ("NTEU") v. Vought*,
    149 F.4th 762 (D.C. Cir. 2025) ........................................................... 1, 3, 8, 10, 11

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) .......................................................................................................7

*Or. Health & Sci. Univ. v. Engels*,
    Civ. A. No. 24-2184 (RC), 2025 WL 1707630 (D.D.C. June 17, 2025) ..................9

*Pacito v. Trump*,
    768 F. Supp. 3d 1199 (W.D. Wash. 2025) .............................................................10

*Palisades Gen. Hosp. Inc. v. Leavitt*,
    426 F.3d 400 (D.C. Cir. 2005) ................................................................................14

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*,
    43 F. Supp. 3d 28 (D.D.C. 2014) ...........................................................................13

*PPG Indus., Inc. v. United States*,
    52 F.3d 363 (D.C. Cir. 1995) ..................................................................................14

*Soundboard Ass'n v. FTC*,
    888 F.3d 1261 (D.C. Cir. 2018) ..........................................................................9, 10

*Sw. Airlines Co. v. Dep't of Transp.*,
    832 F.3d 270 (D.C. Cir. 2016) ..................................................................................9

*Talal Al-Zahrani v. Rodriguez*,
    669 F.3d 315 (D.C. Cir. 2012) ................................................................................16

*Tootle v. Sec'y of Navy*,
  446 F.3d 167 (D.C. Cir. 2006)...........................................................................................11, 12

*Trudeau v. FTC*,
  456 F.3d 178 (D.C. Cir. 2006)................................................................................................14

*United States v. Texas*,
  599 U.S. 670 (2023)..................................................................................................................3

**Other Authorities**

Exec. Order No.14,222, 90 Fed.Reg. 11,095 (Feb. 26, 2025)......................................................14

Exec. Order No. 14,242, 90 Fed. Reg. 13,679 (Mar. 20, 2025)…………………………......13, 14

Defendants Linda McMahon, in her official capacity as Secretary of Education (the "Secretary"), and the Department of Education (the "Department"), through their undersigned counsel, respectfully file this reply in further support of their motion to dismiss Plaintiffs' Second Amended Complaint in full pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) and in further support of their motion to be excused from Local Civil Rule 7(n)'s requirements ("Motion" or "Mot.," ECF No. 33).

## INTRODUCTION

"[T]he APA does not make federal courts 'roving commissions' assigned to pass on how well federal agencies are satisfying their statutory obligations." *Nat'l Treasury Emps. Union ("NTEU") v. Vought*, 149 F.4th 762, 780-81 (D.C. Cir. 2025). Plaintiffs, however, ask this Court to do exactly that. In bringing this Administrative Procedure Act ("APA") case, Plaintiffs still request this Court pass judgment on the Department's ability to satisfy its statutory obligations as related to the Institute of Education Sciences ("IES" or the "Institute").

The Court should dismiss Plaintiffs' Second Amended Complaint in full. Plaintiffs fail to demonstrate any non-speculative harms as required to establish standing. And any claims challenging the termination of contracts do not belong in this Court.

Further, critically, Plaintiffs do not identify any final, discrete agency action for this Court's review. Their Amended Complaint merely "bund[es] together a collection of discrete actions, present[s] them as facets of a single event, and then challeng[es] that event instead of the individual actions," which does not constitute a reviewable agency action under the APA. Mem. Op. at 11,[1] ECF No. 25. Moreover, any choices about how to implement any programs mandated by statute to ultimately best deliver such research or services remain within the discretion of the

---

[1]    All citations are to the ECF-generated page numbers.

Executive and thus are not subject to review under the APA. And any unreasonable delay claims related to Plaintiff's requests for disclosure risk review should be dismissed with prejudice as moot. Finally, as Plaintiffs' Second Amended Complaint fail at the threshold, Defendants should not be required to produce, nor should the Court be burdened with the submission of, an administrative record pending the Court's consideration of the motion to dismiss.

**ARGUMENT**

**I.    <u>Plaintiffs Lack Standing.</u>**

Because Plaintiffs fail to allege informational standing, organizational standing, or associational standing, the Court should dismiss Plaintiffs' Amended Complaint.

    **A.    Plaintiffs Fail to Demonstrate Informational Standing on Behalf of Themselves or Their Members Regarding Any Alleged Lack of Access to Information.**

The Opposition clarifies that Plaintiffs are relying on a theory of informational standing to bring their claims challenging the alleged termination of the BPS:20/25, HSLS:09, HS&B:22, and ECLS-K:2024 studies, as well as the alleged halting of restricted-use data license application processing. *See* Pl.s' Opp'n to Mot. ("Opp'n") at 23-27, 29-30, ECF No. 35.

Plaintiffs and their members' alleged informational injuries are rooted in their allegations that the four studies and the restricted-use data license application processing have been terminated. *See* Opp'n at 23-27, 29-30. Plaintiffs and their members assume that they will never obtain the same or similar information or data from those studies or have restricted-use data license applications processed. *See* 2d Am. Compl. ¶¶ 30-69. But the Department has announced that the processing of restricted-use data license applications is "paused until further notice," *see* https://www.researchdatagov.org/, which is consistent with the notifications that Plaintiff AEFP's members had received. *See* Matsudaira Decl. ¶ 9, ECF No. 35-7; Mumma Decl. ¶ 9, ECF No. 35-3. In this light, Plaintiffs' members at best have pointed to a delay in the processing in their restricted-

- 2 -

use data license applications. *See* Matsudaira Decl. ¶¶ 8-10, ECF No. 35-7; Mumma Decl. ¶¶ 8-10, ECF No. 35-3. As to the HS&B:22 study, Plaintiffs allege that the Institute has stated that "study operations for HS&B:22 have been suspended." 2d Am. Compl. ¶ 48. But Plaintiffs omit the rest of the Institute's announcement on the relevant webpage. *See id.* The entire announcement states the following: "For now, study operations for HS&B:22 have been suspended. It is possible that contact attempts may resume in the future." High School & Beyond Longitudinal Study of 2022, Welcome to HS&B:22!, https://surveys.nces.ed.gov/hsb22. In this light, Plaintiffs' alleged harms are rooted in mere speculation. And such "[s]peculation is ordinarily fatal to standing." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017); *see also Elec. Priv. Info. Ctr. v. FAA,* 892 F.3d 1249, 1255 (D.C. Cir. 2018) (requiring "nature of the injury alleged" not to be speculative); *Cross v. EEOC*, Civ. A. No. 25-3702 (TNM), 2025 U.S. Dist. LEXIS 231723, at *24 (D.D.C. Nov. 25, 2025) (concluding that plaintiff lacked standing, and accordingly dismissing suit *sua sponte*, where the plaintiff's allegations "'require[] speculation' beyond what standing doctrine permits").

Additionally, even if Plaintiffs or their members could establish informational injury, they cannot link that injury to any statutory violation the Court can redress rather than an exercise of proper discretion. In making this argument, Defendants do not, contrary to Plaintiffs' contention, ask the Court to consider the merits of Plaintiffs' claims. *See* Opp'n at 22-23. Rather, Defendants assert that Plaintiffs like AEFP and IHEP generally lack standing to ask this Court to dictate the Department's policy decisions. *See United States v. Texas*, 599 U.S. 670, 677 (2023) (noting as a general matter, "a plaintiff lacks standing to bring such a suit" that "order[s] the Executive Branch to change its arrest or prosecution policies."); *accord Cross*, 2025 U.S. Dist. LEXIS 231723, at *18 ("Agency enforcement discretion applies across the board, not just when courts agree with agency

decisions. Again, standing doctrine binds the Court's hands."). Choices about how to manage the Institute's functions are policy decisions. The Supreme Court in *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006), held that plaintiffs lack standing to raise such challenges to policy decisions, as entertaining such suits will merely result in federal courts becoming "continuing monitors of the wisdom and soundness" of the Executive Branch's implementation of its statutory mandates. *Id.* (cleaned up). In this light, while Plaintiffs may lament that they do not have access to the information they seek as of now, it would be inappropriate for the Court to grant Plaintiffs standing to dictate policy decisions on behalf of the Department.

### B.    Plaintiffs Fail to Demonstrate Either Organizational Standing or Associational Standing for Any Other Non-Informational Harms.

As to any claims regarding the alleged termination of the peer review program, Plaintiffs now contend that Plaintiff AEFP has associational standing, not grounded in any informational injury, to bring those claims. *See* Opp'n at 27-29. Plaintiff AEFP fails to meet its burden.

As an initial matter, contrary to Plaintiffs' arguments otherwise, Opp'n at 28, Defendants did argue that Plaintiffs lacked organizational or associational standing to bring claims challenging the alleged termination of the peer review program. *See* Mot. at 22-26. Defendants specifically argued that Plaintiffs have failed to meet either the first or second prong of the requirements of organizational standing: first, because Plaintiffs had not established that the alleged harm suffered from the loss of the peer review program would inhibit their daily operations, and second, because Plaintiffs had not demonstrated that they used their resources to counteract the loss of harm from the loss of Institute data or information. *See id.* at 22-24. Defendants also specifically argued that, for the same reasons Plaintiffs lacked organizational standing for purposes of demonstrated harm, they also lacked associational standing for all of their claims, necessarily including those challenging the peer review program. *See id.* at 25-26.

Both Plaintiffs AEFP and IHEP concede that they do not have organizational standing to challenge the alleged termination of the peer review program. *See* Opp'n at 27-29. They instead clarify and assert that Plaintiff AEFP has associational standing to challenge the termination of the peer review program based on its members' inability to obtain peer review of their research proposals. *Id.*

But even if Plaintiff AEFP now points to specific members who have been harmed, Plaintiff AEFP still cannot demonstrate that these members' harms are anything but speculative, therefore dooming their standing to bring their claims. *Elec. Priv. Info. Ctr.*, 878 F.3d at 379; *Cross*, 2025 U.S. Dist. LEXIS 231723, at *24. Here, Plaintiff AEFP asserts that its members have experienced harm because the current lack of peer review means that they have lost the opportunity to compete for research grant funding. *See* Opp'n at 27-28. But such harm is based on mere speculation that Plaintiff AEFP's members will not obtain the peer review they seek. At most, Plaintiff AEFP points to its members experiencing a delay in obtaining peer review of their grant proposals. *See* Bassok Decl. ¶ 16 (noting that the grant proposal is "pending" and had been "'forwarded for peer review'" as of September 2, 2025), ECF No. 35-2; Gee Decl. ¶ 10 (noting that the grant proposal is "pending" and had been forwarded for peer review as of April 15, 2025), ECF No. 6-8. Their members then conclude that the delay means that their grant proposals will never obtain the peer review necessary for grant consideration. *See* Bassok Decl. ¶ 16; Gee Decl. ¶¶ 9-10. This is mere speculation, and thus Plaintiff AEFP fails to establish any associational standing to challenge the alleged termination of the peer review program.

## II.    The Court Lacks Jurisdiction Over Plaintiffs' Challenge to the Cancellation of the Institute's Contracts.

None of Plaintiffs' claims challenging the termination of the contracts for BPS 2020/25, HSLS:09, HS&B:22, ECLS-K:2024, and the peer review program (Counts I to VI) are reviewable

by this Court. They are precluded from review under the Tucker Act, and Plaintiffs have failed to demonstrate otherwise.

To start, the claims challenging the termination of the four studies and the peer review program are essentially actions grounded in contract under the test articulated by the D.C. Circuit in *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). The Court need not look further than Plaintiffs' own allegations to conclude as much. Plaintiffs rely primarily on the termination of the contracts supporting the studies and the peer review program to infer some decision to terminate those studies, as well as the general reduction in staffing at the Institute to support the work on those contracts, as the basis for their claims. *See* 2d Am. Compl. ¶¶ 30-69.

The second *Megapulse* factor is also dispositive. Again, the Court need not look further than Plaintiffs' own allegations to understand the relief that they seek sounds in contract. They specifically ask the Court to set aside the alleged termination of those studies and the peer review program, which they allege were performed through contracts. *See* 2d Am. Compl. Prayer for Relief; *id.* ¶¶ 30-69. In other words, Plaintiffs essentially ask this Court to reinstate those contracts for those studies and the peer review program, which this Court has already found "can look a lot like a jurisdictionally improper order for specific performance." Mem. Op. at 23.

Plaintiffs may have artfully pled their Second Amended Complaint to avoid any specific mention of "contract" in the enumeration of their claims or in their prayer for relief. But Plaintiffs cannot avoid the Tucker Act through such creative pleading. At its core, Plaintiffs' Second Amended Complaint is rooted in the Department's termination of the contracts that supported the studies and peer review program, and Plaintiffs seek to reinstate those contracts. But for the reasons noted above and in Defendants' Motion, the Court does not have jurisdiction to grant Plaintiffs the

relief they seek under the Tucker Act, and therefore Plaintiffs' claims challenging the alleged termination of those four studies and the peer review program (Counts I to VI) should be dismissed.

**III.**   **Plaintiffs Fail to Sufficiently Allege Claims Under the APA.**

Plaintiffs fail to sufficiently allege any claims under the APA. First, Plaintiffs fail to seek judicial review of a discrete agency action. Second, Plaintiffs fail to allege any final agency action as to the restricted-use data license application processing. Third, there are adequate alternative remedies available as to any challenges to the termination of contracts, thus precluding Plaintiffs' APA challenges. Finally, the Department's actions are committed to agency discretion by law.

**A.**   **Plaintiffs Do Not Seek Judicial Review of a Discrete Agency Action.**

Plaintiffs' attempted identification of the alleged termination of four studies, the peer review program, and processing of restricted-use data license applications does not save their Second Amended Complaint from dismissal. Plaintiffs may have broken up their counts to identify these specific actions, but such creative pleading cannot hide their ultimate goal – to bring a broad-based programmatic challenge to the Institute's management of its programs. Indeed, Plaintiffs' intent is clear from the plain language of their Amended Complaint. Their Second Amended Complaint specifically states that they bring this case because Defendants "have terminated many of the programs by which [the Institute] carries out its statutory duties—without replacing them and without any plans as to how the agency would do so." 2d Am. Compl. ¶ 3. Again, this is exactly the type of general broad-based claim rejected by the Supreme Court in *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990) and *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 2 (2004).

But even if the Court were to accept Plaintiffs' framing of their allegations, Plaintiffs still do not identify discrete agency actions. The Department has announced that processing of restricted-use data license applications is "paused until further notice." *See*

https://www.researchdatagov.org/. And again, as to the HS&B:22 study, the Department has stated, "For now, study operations for HS&B:22 have been suspended. It is possible that contact attempts may resume in the future." High School & Beyond Longitudinal Study of 2022, Welcome to HS&B:22!, https://surveys.nces.ed.gov/hsb22.

Plaintiffs infer some agency decision about the Institute's status based on other alleged events, the termination of the contracts for those studies, the reduced staffing, and lack of information from the Institute regarding these studies. *See* 2d Am. Compl. ¶¶ 30-69. But this pleading strategy is the exact kind of "bundling together a collection of discrete actions, presenting them as facets of a single event, and then challenging that event instead of the individual actions" that the Court has already found to be improper for APA review. *See* Mem. Op. at 11. In this way, Plaintiffs' attempts to differentiate *NTEU*, 149 F.4th at 780-85 fall flat, *see* Opp'n at 35, and Plaintiffs' claims are still no different from those the D.C. Circuit rejected in that case.

Ultimately, Plaintiffs may have amended their complaint to identify even more purported agency actions to challenge, but the same inappropriate pleading strategy remains. Plaintiffs are still extrapolating some final decision from a collection of events at the Institute. Because Plaintiffs still employ the same pleading strategy that this Court has already found as a general matter to be insufficient to obtain APA review, *see* Mem. Op. at 9-18, there is no basis for this Court to rule any differently than before; the law of the case applies, and the Court should find that Plaintiffs have failed to identify any discrete agency actions for this Court's review. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996).

### B.      Plaintiffs Do Not Identify a Final Agency Action.

Even if the Court were to presume that the contract cancellations and pause on restricted-use data license applications processing were discrete agency decisions, Plaintiffs still have not

demonstrated any final agency action as to purported status of the restricted-use data license application processing.  Plaintiff's arguments to the contrary are unpersuasive.

Plaintiffs cannot point to the purported "pause" in processing applications as the purported final agency decision. In considering the first prong of the *Bennet* test for finality, the D.C. Circuit states that courts must look "from the agency's perspective (whether the action represents the culmination of the agency's decisionmaking)." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1271 (D.C. Cir. 2018).

Critically, "[c]ontext matters, especially when determining whether an action is the 'consummation' of a decision-making process." *Or. Health & Sci. Univ. v. Engels*, Civ. A. No. 24-2184 (RC), 2025 WL 1707630, at *7 (D.D.C. June 17, 2025). To mark the consummation of the agency's decisionmaking, the decision "must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The Agency's decision must instead "represent[ ] the culmination of the agency's decisionmaking." *Soundboard*, 888 F.3d at 1271. Subsequent actions by an agency may prove that an interim event in question was precisely that— i.e., interim—and was not the culmination of the agency's decisionmaking process. *See, e.g.*, *Sw. Airlines Co. v. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016) ("In assessing whether a particular agency action qualifies as final for purposes of judicial review, this court and the Supreme Court have looked to the way in which the agency subsequently treats the challenged action."); *BenefitAlign, LLC v. Ctrs. for Medicare & Medicaid Servs.*, Civ. A. No. 24-2494 (JEB), 2024 WL 6080275, at *1 (D.D.C. Sept. 30, 2024) ("Here, given that CMS is currently conducting an audit that will determine Plaintiffs' final status, it is unclear why the interim suspension could stand as the consummation of the agency's decisionmaking process.").

Here, context demonstrates that the Department has not yet reached the culmination of its decision-making process as it concerns the status of restricted-use data license application processing. Plaintiff acknowledges that the Department has merely indicated that application processing is "'paused until further notice.'" 2d Am. Compl. ¶ 66 (referring to https://www.researchdatagov.org/). In this light, the public announcement evinces a mere temporary pause in processing restricted-use data license applications pending further discussions and decision-making within the Institute.

That Plaintiffs have suffered consequences from the temporary pause in restricted-use data license application processing is also not dispositive to the finality analysis. *See* Opp'n at 37. "Deficiency from either perspective [of the *Bennet prong*] is sufficient to dismiss a claim." *Soundboard*, 888 F.3d at 1271. "Thus, there is no need to reach the second *Bennett* prong if the action does not mark the consummation of agency decisionmaking." *Id.*

Additionally, none of the cases Plaintiffs cite are dispositive. The only issue in *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 36, 53 & n.7 (D.D.C. 2025), was the second prong of the *Bennett* test, which Defendants did not dispute in their Motion. *Louisiana v. Biden*, 622 F. Supp. 3d 267, 291 (W.D. La. 2022), and *Pacito v. Trump*, 768 F. Supp. 3d 1199, 1228 (W.D. Wash. 2025), are out-of-circuit district court cases that are not binding on this Court. This holds especially true where the D.C. Circuit has specifically held that mere instructions to pause work pending approval is not final agency action. *See NTEU*, 149 F.4th at 784; *see also BenefitAlign*, 2024 WL 6080275, at *1 ("Beginning with Plaintiffs' APA count, the Court has serious questions about whether the suspension constitutes final agency action.").

Lastly, Plaintiffs unsuccessfully attempt to distinguish *NTEU*, 149 F.4th at 784. There, the D.C. Circuit found that a pause in the performance of any work at the agency pending approval

did not constitute the agency's consummation of its decision-making process to halt all work. *See id.* Contrary to Plaintiffs' assertions otherwise, the Court's conclusion did not hinge on the fact that the email made exceptions to the halt-work order. Rather, the Court engaged in a fact-specific inquiry into the context in which that email was sent and concluded that since the email made some exceptions for some work, the Court could find no "definitive agency decision to stop mandatory work." *Id.* Likewise, the Court must consider the specific context of the Department's announcement of the "pause" in processing applications. As explained above, the Department has merely announced a pause in application processing pending further decisions. Thus, Plaintiffs fail to allege any final agency action as to the current pause in processing restricted-use data license applications.

### C.    There Are Adequate Alternative Remedies Available.

Plaintiff also fails to demonstrate that there are no adequate alternative remedies under the Tucker Act with respect to any challenges to the cancellation of the contracts for certain studies and the peer review access program.

First, Plaintiff's citation to *Tootle v. Sec'y of Navy*, 446 F.3d 167 (D.C. Cir. 2006), is not dispositive. In that case, the D.C. Circuit held that the plaintiff's APA claim was not precluded by the Tucker Act because the plaintiff was not seeking review of a contract, but instead was seeking judicial review of "a determination, made by a Navy physical evaluation board in 1997, that he was 'fit for duty,' and, thus, not eligible for medical retirement." *Id.* at 168, 176-77. Accordingly, while the D.C. Circuit indicated that it "categorically reject[s] the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims," it ultimately concluded that "[w]e need not tarry further over this issue, because it is clear in this case that the District Court was not divested of its jurisdiction by the Tucker Act."

*Id.* at 176-77. Unlike here, however, and as explained, the Tucker Act does apply to preclude Plaintiff's challenges to the contracts themselves.

And Plaintiff's arguments as to why it would not have jurisdiction before the Court of Federal Claims to challenge such contracts is conclusory at best. *See* Opp'n at 39. In support of informational standing, Plaintiffs themselves have emphasized their purported entitlement to the data and research from those studies for which Education had entered into contracts. *See id.* at 21. While Defendant may not necessarily agree that Plaintiffs could establish jurisdiction in the Court of the Federal Claims, that court might consider, on the merits, "whether the contract reflects the intent of the contracting parties to benefit a third party" and, further, whether there has indeed been a breach. *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021). That Plaintiffs may not necessarily get all the relief at the Court of Federal Claims that they request here does not mean their relief would be inadequate. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985) ("To hold that the [Contract Disputes Act] does not apply merely because, under that scheme, plaintiff cannot receive all its requested remedies, would intolerably upset the congressional purpose underlying the Act.").

Thus, there are alternative adequate remedies of law as to Plaintiffs' challenges to the determination of the contracts related to the studies and the peer review program, and review under the APA accordingly is inappropriate.

### D.    The Department's Programmatic Implementation Decisions Are Committed to Agency Discretion.

As an initial matter, Plaintiffs appear to misunderstand Defendants' arguments about Plaintiff's failure to allege any arbitrary or capricious action sufficient to survive a motion to dismiss. Defendants did not argue on the merits that any of the actions at issue were not arbitrary or capricious, as Plaintiffs assert. *See* Opp'n at 41. Rather, Defendants argued that Plaintiffs failed

to meet their burden to allege any actions taken arbitrarily or capriciously since those actions that Plaintiffs have identified are committed to agency discretion and therefore are not appropriate for this Court's review under the APA. *See* Mot. at 33-36.

It is Plaintiffs' burden at the pleading stage to allege "sufficient facts" accepted as true that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And Plaintiffs have still failed to demonstrate that they have met their burden. In their Motion, Defendants pointed to President Trump's and Secretary McMahon's publicly available pronouncements that articulate their findings about the presence of inefficiency and waste at the Department. *See* Mot. at 14-16, 34 (citing Exec. Order No. 14,242 § 1, 90 Fed. Reg. 13,679 (Mar. 20, 2025) (the "Department Executive Order"); Mar. 3, 2025, Speech). "Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014); *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016). Defendants pointed to these facts to show how the Secretary has taken the first steps to realign the Department through contract cancellations and programmatic decisions. *See* Mot. at 33-36. Given these facts, of which the Court may take judicial notice, Plaintiffs' Second Amended Complaint amounts to a challenge to the Department's policy decisions about how to best implement its statutorily-mandated functions within the Institute.

But the decisions that Plaintiffs purportedly challenge are not appropriate for APA review as a matter of law because they are entirely within the agency's discretion. *See* Mem. Op. at 16 ("It is not the place of this Court to substitute its own judgment for that of the agency on staffing issues."); *id.* at 13-14 (noting that "a unilateral dismantlement (or large-scale reorganization)" "cannot be laid before the courts for wholesale correction under the APA" (cleaned up)); *Lincoln*

*v. Virgil*, 508 U.S. 182, 191-92 (1993) (noting that agencies are permitted to "meet [their] statutory responsibilities in what [the new administration] sees as the most effective or desirable way.").

Moreover, Plaintiffs cannot meet their burden by pointing to their allegations that the Secretary failed to consider the statutory obligations before terminating certain contracts. *See* Opp'n at 42 (citing 2d Am. Compl. ¶¶ 96-97, 108). As noted above, even at the Rule 12(b)(6) stage, it is well-settled that a court need not accept as true an inference "unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). Here, Defendants pointed to the Contract Executive Order and the Department Executive Order, which both require the Department to pursue any review of contracts and grants for termination or modification, or other programmatic changes, pursuant to law. Exec. Order No. 14,222 § 3(b), 90 Fed. Reg. 11,095 (Feb. 26, 2025) (the "Contract Executive Order"); Department Executive Order § 2(b).

Additionally, as to the relief available, Defendants note that in APA cases, "[t]he district court ha[s] no jurisdiction to order specific relief." *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). "Unlike a district court managing a garden variety civil suit, a district court reviewing a final agency action does not perform its normal role but instead sits as an appellate tribunal." *Id.* Accordingly, "when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995).

## IV.    Plaintiff IHEP's Unreasonable Delay Claims Should Be Dismissed with Prejudice.

Plaintiff IHEP acknowledges that its unreasonable delay claims should be dismissed. *See* Opp'n at 14 n.3. Plaintiff IHEP, however, argues that these claims should only be dismissed without prejudice. *Id.* The dismissal, however, should be with prejudice.

- 14 -

A dismissal with prejudice is "is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

Plaintiff IHEP acknowledges that the Institute issued decisions as to its February 7, 2025, and March 14, 2025, disclosure risk review requests. Opp'n at 14 n.3; Voight Decl. ¶¶ 8-9, ECF No. 35-6. Plaintiff IHEP also informs the Court that it withdrew its March 4, 2025, disclosure risk review request. Opp'n at 14 n.3; Voight Decl. ¶¶ 8-9. In this light, Plaintiff IHEP's unreasonable delay claims related to these requests are moot – either because Plaintiff IHEP got all the relief it sought or acted itself to eliminate any live controversy. In this light, Plaintiff IHEP provides no basis for its contention that its unreasonable delay claims as to these requests could ever become live again. There is thus no basis for this Court to permit Plaintiff IHEP to preserve its rights to bring these claims against Defendants in the future via another complaint. Plaintiff IHEP's unreasonable delay claims should be dismissed with prejudice.

## V.   Defendants Should Be Relieved of Their Obligation to File a Certified List of the Administrative Record and Serve the Administrative Record Simultaneously with this Motion.

Finally, Plaintiffs fail to demonstrate that Defendants should be required to produce an administrative record at this time.

First, Plaintiffs suggest Defendants violated Local Civil Rule 7(n) by failing to produce an administrative record simultaneously with their motion to dismiss. *See* Opp'n at 43. To the contrary, Defendants abided by this Court's Standing Order. Paragraph 13(B) of the Standing Order states: "If the Government is filing a motion to dismiss, and believes that the LCvR 7(n) requirement to 'file a certified list of the contents of the administrative record . . . simultaneously' would not be helpful to the resolution of the case, the Government must file—simultaneously with

the motion to dismiss—a motion asking the Court to excuse the agency from the requirements of LCvR 7(n)." ECF No. 5 at 5-6. Defendants did just that when they moved to dismiss Plaintiffs' Amended Complaint on August 19, 2025. ECF No. 33.

Second, other than their own desire to proceed with summary judgment, Plaintiffs fail to point to any extenuating circumstances necessitating expedited summary judgment briefing of the merits to justify production of the administrative record before the Court rules on Defendants' now-ripe motion to dismiss. *See* Opp'n at 43. On the other end of the scale, however, Defendants have raised subject matter jurisdiction and other threshold arguments in their Motion to Dismiss that, if the Court were to agree with them, would obviate any need to engage in any briefing on the merits of Plaintiff's APA challenges.

The Court has an obligation to consider jurisdictional arguments before reaching any merits issues. *See Talal Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317-18 (D.C. Cir. 2012). And, contrary to Plaintiffs' suggestion otherwise, Opp'n at 43, in making such jurisdictional and threshold arguments pursuant to Rules 12(b)(1) and 12(b)(6), Defendants have relied entirely on allegations in the Second Amended Complaint or facts of which the Court may take judicial notice. *See Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).[2] As a result, there is no need for the Court to require production of the administrative record to consider and decide Defendants' motion to dismiss. Tellingly, Plaintiffs did not need an administrative record to oppose Defendants' motion to dismiss, *see* Opp'n, nor are there factual issues to resolve via an administrative record in ruling on the motion to dismiss.

---

[2]     Defendants correct a citation in their Motion. Instead of the citation to *Vico Prods. Co. v. Nat'l Lab. Rels. Bd.*, 333 F.3d 198, 198 (D.C. Cir. 2003) (citations) on Page 18 of ECF No. 33, the correct citation should be to *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).

Thus, for these reasons, it would be an inefficient use of resources for Defendants to produce an administrative record, for Defendants to burden the Court with it, and for the parties to brief the merits of the APA challenges where Defendants have raised dispositive jurisdictional and other threshold arguments that could very well obviate any further merits briefing.

## CONCLUSION

For these reasons and those stated in Defendants' Motion, Plaintiffs' Second Amended Complaint should be dismissed. Defendants should also be relieved of the obligation to file a certified list of the administrative record and serve the administrative record pending the Court's resolution of Defendants' motion to dismiss.


Dated: December 1, 2025                    Respectfully submitted,

                                           JEANINE FERRIS PIRRO
                                           United States Attorney

                                           PETER C. PFAFFENROTH, D.C. Bar #496637
                                           Chief, Civil Division

                                           By:  _____/s/ Erika Oblea_____
                                               ERIKA OBLEA, D.C. Bar #1034393
                                               DIMITAR P. GEORGIEV, D.C. Bar #1735756
                                               Assistant United States Attorneys
                                               601 D Street, NW
                                               Washington, DC 20530
                                               (202) 252-2500 (main)
                                               Erika.oblea@usdoj.gov
                                               dimitar.georgiev-remmel@usdoj.gov

                                           *Attorneys for the United States of America*